LABORDE, Judge.
Joseph B. Walsh, defendant, appeals from that portion of the trial court’s judgment modifying the permanent alimony awarded to Eva Skinner Walsh from $300 per month to $234 per month. Joseph Walsh contends the trial judge erred in refusing to terminate permanent alimony to Eva Walsh. We find no error and, therefore, affirm.
Mr. Walsh asks for termination of alimony payments on the grounds that Mrs. Walsh has sufficient means for her support and that a reduction in his income has affected his ability to pay.
A former spouse cannot be granted permanent periodic alimony unless he or she has insufficient means for support. La.Civ.Code art. 160. The facts, sufficiently summarized by the trial judge in his reasons for judgment, are the following:
“The evidence establishes that Mrs. Walsh is a sixty year old lady who is working, but in poor health. She suffers from a cardiac condition that caused her to be hospitalized four times some of which occurred while she was working for the LaSalle Hospital. Her present hospitalization insurance does not cover her cardiac problems. [The judge also found that Mrs. Walsh contributes seventy-five dollars a month to the support of her mother.]
“Mrs. Walsh was laid off from the LaSalle General Hospital where she worked as secretary to the Hospital Administrator earning $1,000.00 per month. She was unemployed for six months. She was self employed for a while typing for others in her home. She recently obtained employment with a law firm in Monroe, Louisiana where she earns $1,000.00 per month. By virtue of her new employment, she has to commute by auto approximately one hundred and thirty miles per day, round trip. Her net take home pay is $812.80 per month_”
The trial judge also found that:
“Transportation expenses consume $353.00 of this, being $175.00 for the car note, $28.00 for insurance, and $150.00 for operational costs. The expenditure of this $353.00 is essential to her ability to continue earning the “extra” $459.80 on which she lives. Out of this she needs to pay for shelter, food, her own medical care, clothing, water, electricity *241 and/or gas, phone, and normal grooming necessities.”
The trial judge found further that:
“Mrs. Walsh owns her own home. She acquired it a few years ago after she and Mr. Walsh separated. She is in arrears on her mortgage payments because she was unemployed for six months. Her lender reduced the monthly payments temporarily to accommodate her during her unemployment. She owns a 1980 Chevrolet Citation, which is mortgaged. She stopped making monthly payments on it because of her unemployment and her lender allowed her to convert the payment schedule to semiannual payments as an accommodation to her. Mrs. Walsh had to pay for some of her own medical expenses and sold a lot to meet these costs. She had enough left over to put $2,000.00 into an I.R.A. account and $1,000.00 into.- a checking account. On the date of trial of this rule, she had $1,200.00 in her checking account. She claims that the I.R.A. account is essential because she has no retirement and it and the $1,000.00 in her checking account constitute a reserve for the inevitable day when she can no longer work or retires or for demands on her purse for uninsured medical expenses.”

“Mr. Walsh was in the lumber business [by] himself for many years. After the litigants separated, he obtained a position with Ford, Bacon and Davis in Monroe where he earned $17,512.00 per year. He was earning about that much when the alimony obligation owed to Mrs. Walsh was last fixed. Since then, his circumstances have changed. In 1983, his relationship with Ford, Bacon and Davis was terminated and he began drawing Social Security Retirement Benefits at age 62. (Who terminated who was not established.) He also worked as a log buyer for a lumber company earning $6,908.00 during a two month period in commissions. He receives $524.00 per month from the Social Security Administration.”
The amount necessary for maintenance of a divorced wife is to be determined by the circumstances of each particular case. Pearce v. Pearce, 348 So.2d 75, 78 (La.1977). Based on the above factual findings, the trial judge concluded that the circumstances of Mrs. Walsh had not improved and may be viewed as having worsened since the first fixing of alimony. The trial judge also concluded that Mr. Walsh had an earning capacity of $17,000 per year and that he was able to assist Mrs. Walsh.
In the area of domestic relations, the factual findings of the trial judge are to be accorded very substantial weight. Id. at 78. Under the particular facts and circumstances of this case, we are unable to say the trial judge abused his discretion in awarding alimony to Mrs. Walsh.
In fixing the amount of support, considerable discretion is also vested in the trial judge. Id. at 78. We are unable to say that the trial judge abused his discretion by modifying the permanent alimony award from $300 per month to $234 per month.
DECREE
For the reasons assigned, the judgment of trial court is affirmed at appellant’s cost.
AFFIRMED.